### POLYGON PRODUCTS CORPORATION v. KANT-RUST PRODUCTS CORPORATION et al.

(District Court, D. New Jersey. December 29, 1922.)

No. 3434.

Patents ⬤═328—1,333,363, claims 2, 3, 5, and 6, for compound for penetrating interior corrosion held not infringed when limited so as to be valid.

The Abbott patent, No. 1,333,363, claims 2, 3, 5, and 6, for a compound for penetrating interior corrosion, consisting of a penetrant, a colloid, and a lubricant, *held* not infringed, when limited, as it must be to avoid invalidity, to the particular elements specified.

In Equity. Suit for infringement of the Abbott patent, No. 1,333,-363, by the Polygon Products Corporation against the Kant-Rust Products Corporation and others. Bill dismissed.

Alan M. Johnson, of New York City (Ellis Spear, Jr., of Boston, Mass., of counsel), for plaintiff.

Egner & Beatty, of Newark, N. J. (George W. Case, Jr., of New York City, of counsel), for defendants.

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

LYNCH, District Judge. This is the usual patent litigation; the bill alleging infringement, and the answer attacking the patent's validity, besides denying infringement.

The patent in suit, which was granted to Charles Matthew Abbott on March 9, 1920, relates to certain new and useful improvements in compounds for penetrating interior corrosion. According to the specification, the invention was adapted to penetrate minute interstices for the loosening of rust or other corrosive adhesion in such location, as, for example, to clean the threads of a nut and bolt, or in any other place where a part to be removed is held against normal free movement.

The proposed combination calls for the presence of three elements, viz. a penetrating agent, capable of disintegrating rust or other corrosion, a penetrating lubricant, and a colloid to be carried in by the thin body of the penetrant in combination with the lubricant; the complete invention therefore consisting of a penetrant, a colloid, and a lubricant. Old elements are used—nothing new in the way of a penetrant, colloid, or lubricant being created.

As to the penetrant, no particular kind is recommended. The specification (page 2, line 34), after mentioning nine different penetrants which "may" be used, adds "or similar hydrocarbons of low viscosity." No particular colloid is provided for. The undisputed evidence is that every substance (wood, steel, cloth, paper, glass, etc.) is a colloid, or colloidally soluble. It is, however, stated that the colloid should "preferably contain coumarone resin, polymerized olefins, or polymerized unsaturated fatty oil." And as to the third element, the lubricant, we find the following provision:

"The lubricant may comprise higher aliphatic or naphthenic hydrocarbons or vegetable or animal oils."

Passing to the claims, those in issue read as follows:

"2. The process of releasing rust films between adherent surfaces, which consists in applying to the surfaces a liquid hydrocarbon of low viscosity and a material colloidally soluble therein, and a relatively viscous lubricant.

"3. The process of releasing rust films between adherent surfaces, which consists in applying to the surfaces a liquid hydrocarbon of low viscosity and a material colloidally soluble therein."

"5. A penetrating adhesion freeing compound for releasing rust films between adherent surfaces, comprising a volatile, penetrating, colloidal solvent having a volatilization retarding colloid in colloidal solution within it, said colloid having a lubricative character while in colloidal solution in the penetrating solvent, said colloid having also the property of retarding volatilization of the solvent while in solution therewith.

"6. A penetrating adhesion freeing solution for releasing rust films between adherent surfaces comprising a volatile penetrating corrosion solvent and an oily vehicle for the solvent having a volatilization retarding relation to the solvent."

If dissolving interior corrosion (rust) can be accomplished only by using a penetrant, a colloid, and a lubricant, then this patent at its face value would prohibit all persons from accomplishing that by using any materials which might possess those three characteristics. This strikes me as being very sweeping, too sweeping. Patents, particularly combination patents, providing for the use of well-known elements,

should be more definite and certain than this. There can be no infringement of a combination patent unless all of the elements claimed in the combination are made use of. If a different combination is used, the rights of the patented combination are not interfered with.

The defendants, producing a lubricant known as "Kant-Rust," composed of artificial graphite, petroleum oil, coal tar oil, and animal fat, are charged with infringing the plaintiff's patent. While the defendant's product, "Kant-Rust," was designed and is chiefly used for the lubrication of springs of automobiles, it can be and probably is used for dissolving interior corrosion; and if the terms of the patent in suit should be construed to cover every combination under the sun that may consist of a penetrant, a colloid, and a lubricant, then the defendants' product infringes. I am inclined to hold that the patent is invalid because of its being so vague and indefinite. That is not necessary, however. I think it is possible to dispose of this case by limiting the patent to the materials specifically mentioned therein, and then considering whether the defendants have used those particular materials. I certainly do not think that the patent should be broadened to cover ingredients which the patentee may not have had in mind. The defendants' article does possess a penetrant, a colloid, and a lubricant; but their colloid is not that mentioned by the patentee, to wit, coumarone resin, polymerized olefins, or polymerized unsaturated fatty oil. The defendants not using the colloid which the patent as limited calls for, there is no infringement.

Another point. At page 2, line 47, of the patent in suit, we find the following:

"As an example of a compound which I have found advantageous, the following is given: By weight five parts xylol, three parts sperm oil, one part coumarone resin. These, when they are mixed, make a substantially permanent mixture, from which the xylol does not readily evaporate, and which, when applied to a rusted part, has a rapid action upon the rust material, coupled with a suitable lubrication, which makes the removal of the rusted part easy."

The proportions found in the defendants' product are vastly different.

It appearing that the defendants have not infringed the plaintiff's patent as herein limited, a decree dismissing the bill, with costs, will be entered.